**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |  |
|---|---|---|
| | : | CIVIL CASE NO. |
| | : | 3:23-cv-01267 (JCH) |
| | : | |
| | : | |
| IN RE: VALUEX RESEARCH, LLC | : | |
| | : | SEPTEMBER 13, 2024 |
| | : | |

**RULING RE: PETITIONING CREDITORS' APPEAL**

**I.     INTRODUCTION**

Appellants Eric Ross ("Mr. Ross"), Francine Ross, Landy Properties LLC, Carrie Kendall, Justin Ross, the Ross Trust, Arthur Blick, and Lauren Blick (together, the "appellants") file this consolidated appeal from the Ruling of the Bankruptcy Court granting Valuex Research, LLC's ("Valuex Research") Motion to Dismiss the Involuntary Bankruptcy Petition.  See Memorandum of Decision ("Ruling"), In re Valuex Research LLC, Bankruptcy Case No. 22-50693, (Bankr. D. Conn. 2022) (Doc. No. 61).  The appellants, who are all petitioning creditors, seek the reversal of the Ruling.  See Appellant's Brief (Doc. No. 21).

For the reasons set forth below, the decision of the Bankruptcy Court dismissing Valuex Research's involuntary petition is AFFIRMED.

## II.    BACKGROUND

### A.    Factual Background[1]

Valuex Research, LLC ("Valuex Research") is a Connecticut Limited Liability Company which was formed in 2016 and dissolved in February 2023.  See Ruling, Findings of Fact ("Factual Findings") at ¶ 12.  Ulrika Johansson ("Ms. Johansson") is the CEO and managing member of Valuex Research.  Id.  The business purpose of Valuex Research was to research, market, and license the VX1000, a weighted investment index developed in Sweden and first used in 2007.  Id. at ¶¶ 17-18.

Mr. Ross is a certified professional accountant in both New York and Connecticut, who has forensic accounting experience.  Id. at ¶ 21.  Mr. Ross is not an attorney.  Id.  Mr. Ross and Ms. Johansson met in August 2017, and were social acquaintances before Mr. Ross became an investor in Valuex Research.  Id. at ¶¶ 22-23.  According to Mr. Ross's testimony, Ms. Johansson discussed with him her desire to find investors who could help Valuex Research to pay its intellectual property bills.  See Hearing Transcript (Bankruptcy Docket [hereinafter "B.C. Doc."] No. 70) at pp. 82:15-83:7.  Mr. Ross testified that, in response, he approached the other petitioning creditors, who include his family and friends, to invest in Valuex Research.  See Id. at pp. 30:20-31:8.

Between November of 2017 and July of 2018, Valuex Research entered into convertible promissory notes ("CPNs") with Mr. Ross and the other petitioning creditors,

---

[1] The facts in this section are drawn from the Bankruptcy Court's Ruling, as well as the parties' moving papers, and are undisputed unless otherwise noted. See In re Murray, 900 F.3d 53, n1. (2d Cir. 2018).

sometimes multiple times, in amounts that ranged from $2,500 and $15,000.  See Factual Findings at ¶¶ 23-31; see Petitioning Creditors Exhibits 21-30 ("CPNs") (B.C. Doc. No. 37).  These investors included Mr. Ross, his wife Ms. Francine Ross, as well as Mr. Ross's children, Carrie Kendall (Ross) and Justin Ross.  Id.  They also included The Ross Trust, Landy Properties, LLC, and Arthur Blick.  Id.  These investors were not Valuex Research's only creditors; the company had a total of thirty-eight creditors with an aggregate debt of approximately $500,000.  Factual Findings at ¶ 16.

The CPNs had an interest rate of 7.5 percent, payable at the note's maturity date.  See CPNs.  The original maturity date of the CPNs was May 31, 2019.  Id.  The maturity date was extended several times by agreement of the petitioning creditors. See Petitioning Creditors Ex. 20 ("CPN extensions") (B.C. Doc. No. 37-21).

In subsequent communications with Ms. Johansson, Mr. Ross appeared to act as a spokesman or representative for the investor group he helped recruit, referring to them as "my group" or "my investor group."  Id. at ¶¶ 33, 35.  However, the petitioning creditors currently dispute whether Mr. Ross's subsequent words and actions reflect the motives of other members of this investor group.  See Appellant's Brief ("Appellant's Br.") at 36-38.

By May 2022, however, the relationship between Mr. Ross and Ms. Johansson had soured.  On May 6, 2022, Mr. Ross sent Ms. Johansson an email summarizing the balances of the group's CPNs, and stating "my group has elected to allow the notes to mature and not convert . . . ." See Factual Findings at ¶ 33.  The email also stated, "I would like to discuss with you the maturity payment for Eric and Francine Ross alone. I am willing to take the $7,500 (Nov[.] 17) plus accrued interest and the $2,500 (July

3

2018) plus accrued interest in cash due immediately."  Id.  On May 26, 2022,  Ms. Johansson replied, stating, "[a]s discussed in the call last week and to reiterate the Company is in a process of securing capital and will not be able to repay any matured CPNs (including interest) until the funding round is completed. This would also be applicable to you and Francine's Notes."  Id. at ¶ 34.

On June 5, 2022, Mr. Ross emailed Ms. Johansson and inquired, "My investor group would like to know if they can expect to have their investments in the CPNs dated Nov[.] 2017 and July 2018 to be repaid? I share their concern so I hope you can set my mind at ease with real answers."  Id. at ¶ 35.  Ms. Johansson responded on June 24, 2022, stating, ""[a]s discussed in our last call on May 16th and to reiterate the Company is in a process of securing capital and will not be able to repay any matured CPNs (including interest) until the funding round is completed. I will keep you posted and let you know as soon as the capital is secured."  Id. at ¶ 36.

Mr. Ross knew that Valuex Research had other investors besides his investor group, including Mr. Mark Fisher ("Mr. Fisher").  Id. at ¶ 7.  At some point prior to August 30, 2022, Ms. Johansson informed Mr. Ross that Mr. Fisher, on behalf of an entity known as Monroe Capital Holdings, LLC, filed a lawsuit against Valuex Research to collect amounts owed to it under a CPN.  Id. at ¶ 8.

On November 14, 2022, the Petitioning Creditors sent Valuex Research demand letters for the value of their CPNs plus accrued interest to that date.  See Petitioning Creditors' Ex. 8 ("Demand Letters") (B.C. Doc. No. 37-9).  On November 29, 2022,  Ms. Johansson sent Mr. Ross a formal notice of dissolution for Valuex Research.  See Petitioning Creditors' Ex. 9 ("Dissolution Letter") (B.C. Doc. No. 37-10).  The notice

4

stated "the company has no outstanding accounts receivables, assets, or existing contracts in effect in the market. Hence, there are no funds available for distribution to unsecured creditors."  Id.

On December 3, 2022, Mr. Ross emailed Ms. Johansson and said "for certain, there are assets which exist within this entity Valuex Research LLC although you may have fraudulently conveyed such assets not long ago. Where is the patent?"  See Ex. 15 to Ross Memorandum of Law ("Ross Mem.") (B.C. Doc. No. 20-1).  Ross requested to examine the books and records of Valuex Research but did not receive a response. See Factual Findings at ¶ 9.

On December 8, 2022, Mr. Ross learned that a new company, Valuex Fintech, LLC had been formed.  Id. at ¶ 37.  Prior to filing the involuntary petition, Mr. Ross had reviewed the Connecticut Secretary of State Website and knew that other "Valuex" corporate entities had been created, including Valuex Fintech LLC, Valuex LLC, and Valuex, Inc.  Id. at ¶ 11.  Mr. Ross testified that he observed that some of these entities had listed Ms. Johansson and her husband, Peter Johansson ("Mr. Johansson") (together, "the Johanssons") as founding members. He also testified that they had the same office address and mailing address listed, the latter of which was the Johanssons' residence.  See Hearing Transcript pp. 62:18-23.

In its Factual Findings, the Bankruptcy Court found that the Johanssons are the incorporators of Valuex, Inc., and that Mr. Johansson was the sole managing member of Valuex Fintech, LLC.  Id. at ¶¶ 14-15.  The Bankruptcy Court found, based on Ms. Johansson's testimony, that Valuex Research's assets "include licenses that are

separate from those owned by Valuex Fintech, LLC", and that "Valuex Research has never transferred any assets or money to Valuex Fintech, LLC." Id. at ¶ 20.

On December 9, 2022, Mr. Ross left Ms. Johansson a voicemail message, stating he planned to "treat you with the same disrespect that you are entitled to, including notification to several authorities including courts, which will in all likelihood result in some incredibly unexpected outcomes to you." Id. at ¶ 38. On December 16, 2022, Mr. Ross sent Ms. Johansson an email saying he would "make a referral to federal authorities with adequate proof that you have been operating a Ponzi scheme for years." See Ex. 17 to Ross Mem.

On December 19, 2022, Mr. Ross sent Ms. Johansson an email stating he would file "the Form 205 Involuntary Bankruptcy petition as planned not one day later than December 22, 2022." Factual Findings at ¶ 39. In the same email, he offered that, "[i]n the alternative, you may issue full notes payable to all parties in my group for full value plus accrued interest at 12% signed personally by you and Peter [Johansson] and adding Valuex Fintech LLC with joint and several liability." Id. Mr. Ross testified that, if Ms. Johansson had agreed to his demands, he would not have filed the Petition, even though he had previously accused Valuex Research of being a Ponzi scheme and defrauding people. See Hearing Transcript at 93:3-8.

On December 21, 2022, Ms. Johansson responded to Mr. Ross's email, stating "the offer, previously given to you as a representative for your group, to extend your respective CPN/s still stands. This offer was previously given to you and your group since the company was (and currently still is) unable to make any repayments. If

accepted by you and your group of investors consideration will be made not to dissolve the company." Factual Findings at ¶ 40.

On December 27, 2022, Mr. Ross filed the Chapter 7 Involuntary Petition ("Petition") for bankruptcy pro se. Id. at ¶ 1, see Petition (B.C. Doc. No. 1). The Petition was filled out in Mr. Ross's handwriting, and he is the only petitioning creditor who personally signed it. See Factual Findings at ¶¶ 2-3. Mr. Ross signed the Petition, in his own hand, for all the other petitioning creditors, including for his wife and children, as well as Arthur Blick, the Ross Trust, and Landy Properties, LLC. Id. at ¶¶ 2-4. Mr. Ross is not a managing member of Landy Properties, LLC or a trustee of the Ross Trust. Id. at ¶ 5. Additionally, Mr. Ross listed Ms. Lauren Blick as a petitioning creditor, but she is not a creditor of Valuex Research and the Bankruptcy Court found her inclusion was an error. Id. at ¶ 6. In the field marked "Other names you know the debtor has used in the last eight years," Mr. Ross listed "Valuex Fintech, LLC, Valuex LLC, and Valuex, Inc." Petition at 1 (B.C. Doc. No. 1).

B.    Procedural History

On December 22, 2022, Eric Ross filed the Petition. See Petition. On January 23, 2023, the Bankruptcy Court entered an Order to Appear and Show Cause why the Involuntary Petition should not be dismissed for failure to demonstrate that the Amended Involuntary Summons was properly served on Valuex Research. Order to Appear and Show Cause (B.C. Doc. No. 7). Although the Order directed all of the Petitioning Creditors to appear at the Show Cause Hearing on January 31, 2023, only Mr. Ross appeared. See Hearing Audio (B.C. Doc. No. 10). However, the court declined to take any action on the Order to Appear and Show Cause and directed the

7

Petitioning Creditors to serve the Amended Summons and Involuntary Petition by February 3, 2023. See Hearing Entry (B.C. Doc. No. 9). On February 3, 2022, the Petition and Amended Summons were then served on Valuex Research. Summons Service Executed (B.C. Doc. No. 11).

On March 27, 2023, Valuex Research, LLC filed a Motion to Dismiss the Petition, which argued that the Petition should be dismissed because it was filed in bad faith. See Motion to Dismiss ("Mot. to Dismiss") (B.C. Doc. No. 16). On April 24, 2023, Eric Ross filed a pro se Memorandum of Law in opposition. See Ross Mem. (B.C. Doc. No. 20). On April 28, 2023, Attorney Joseph J. D'Agostino Jr. entered his appearance on behalf of all the Petitioning Creditors other than Mr. Ross, who continued pro se. See Notices of Appearance (B.C. Doc. Nos. 22-28). On May 31, Attorney D'Agostino filed an Objection and counseled Memorandum in Opposition to the Motion to Dismiss. See Objection, (B.C. Doc. No. 35); see Memorandum of Law in Support of Objection, (B.C. Doc. No. 36.).

On August 16, 2023, the Bankruptcy Court held an almost five-hour evidentiary hearing on the Motion to Dismiss. See Hearing Audio File (B.C. Doc. No. 52). Valuex Research called Mr. Ross and Ms. Johansson as witnesses. Id. Mr. Ross and Attorney D'Agostino were allowed to cross-examine Ms. Johansson. Id. Aside from Mr. Ross, none of the other petitioning creditors appeared or testified. Id. In addition, thirty-nine exhibits were introduced into evidence. [2] See Petitioning Creditor Eric Ross's List of

---

[2] On August 23, after the close of evidence for the hearing, Mr. Ross filed an Amended Petition. See Amended Petition (B.C. Doc. No. 53). On August 28, 2023, Attorney D'Agostino filed a Motion for Extend Time to Cure Deficiency (B.C. Doc. No. 57). On August 31, 2023, Attorney D'Agostino filed a separate Amended Involuntary Petition (B.C. Doc. No. 59). Because these documents were filed after the close of evidence at the conclusion of trial, the Bankruptcy Court did not consider them.

Witnesses and Exhibits (B.C. Doc. No. 43), <u>see</u> Valuex Research LLC's List of Exhibits (B.C. Doc. No. 45).

On September 12, 2023, the Bankruptcy Court issued its Ruling, <u>see</u> Memorandum of Decision and Order ("Ruling"), Attach. 1 to Notice of Appeal (Doc. No. 1-1), granting the Motion to Dismiss pursuant to section 707(a) of Title 11 of the U.S. Code. The Ruling concluded that the Petition was filed in bad faith, because Mr. Ross used the threat of the Petition to intimidate Valuex Research, Mr. Ross used the Petition as a litigation tactic, and because the dispute could be properly resolved in state courts. Ruling at 15-21.

Mr. Ross and Attorney D'Agostino both filed appeals, which were consolidated by Order of this court.  <u>See</u> Order (Doc. No. 9).

## III.    STANDARD OF REVIEW

This court has jurisdiction to review final judgments, orders, and decrees of the Bankruptcy Court under section 158(a)(1) of title 28 of the United States Code.  On appeal, a district court will review <u>de novo</u> a bankruptcy court's conclusions of law, including its determination of the legal standards applicable.  Fed. R. Bankr. P. 8013;  <u>In re Refco Inc.</u>, 505 F.3d 109, 116 (2d Cir.2007);  <u>In re Northeastern Contracting Co.</u>, 233 B.R. 15, 18 (D.Conn.1999).

Findings of fact are reviewed for clear error.  <u>In re Toor</u>, 477 B.R. 299, 303 (D. Conn. 2012) (citing <u>In re Stoltz</u>, 315 F.3d 80, 87 (2d Cir.2002)).  A finding is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been made.  <u>Id.</u> (citing <u>In re Ames Dept. Stores, Inc.</u>, 582 F.3d 422, 426 (2d Cir.2009) (internal citation omitted)).  "The Court may affirm on any ground that finds

support in the record and need not limit its review to the bases raised or relied upon in the decisions below." In re Ocean Rig UDW Inc., 585 B.R. 31, 35 (S.D.N.Y. 2018), aff'd, 764 F. App'x 46 (2d Cir. 2019); Borrero v. Connecticut Student Loan Found., No. 97-cv-1382, 1997 WL 695515, at *1 (D. Conn. Oct. 21, 1997).

The Bankruptcy Court's decision to dismiss a case for cause under section 707(a) is guided by equitable considerations and is committed to the sound discretion of the Bankruptcy Court. In re Smith, 507 F.3d 64, 73 (2d Cir. 2007) (internal quotation marks omitted). Accordingly, a reviewing court will "disturb a dismissal for cause only if the bankruptcy court has abused its discretion." In re Murray, 900 F.3d 53, 59 (2d Cir. 2018). "A bankruptcy court abuses its discretion if its decision rests on an error of law or a clearly erroneous factual finding or cannot be located within the range of permissible decisions." Id.

## IV.    DISCUSSION

Most Chapter 7 petitions are filed voluntarily by debtors; fewer than .1 percent of Chapter 7 filings are filed as involuntary petitions by one or more creditors. See Administrative Office of the U.S. Courts, Judicial Facts and Figures, tbl. 7.2, https://www.uscourts.gov/statistics/table/72/judicial-facts-and-figures/2022/09/30 (last visited September 13, 2024). "By giving creditors the ability to bring a debtor into bankruptcy, Congress created a power that could be abused." In re Murray, 900 F.3d 53, 59 (2d Cir. 2018), quoting Rosenberg v. DVI Receivables XVII, LLC, 835 F.3d 414, 419 (3d. Cir. 2016). "Such a remedy exists as an avenue of relief for the benefit of the overall creditor body. . . . [It] was not intended to redress the special grievances, no matter how legitimate, of particular creditors . . . .[Such creditors] must seek redress

10

under state law, in the state courts[,] and not in the bankruptcy court." In re Brooklyn Res. Recovery, Inc., 216 B.R. 470, 486 (Bankr. E.D.N.Y. 1997).

To obtain relief through an involuntary petition, petitioning creditors must meet the threshold requirements of numerosity and combined debt set by section 303, none of which are in dispute here. 11 U.S.C. § 303(b). However, while the requirements of section 303 are necessary, they are not always sufficient. Even if a petition meets the threshold requirements of section 303, a bankruptcy court may still dismiss it under section 707(a) "for cause" and "after notice and a hearing". 11 U.S.C. 707(a). Section 707(a) applies equally to voluntary and involuntary chapter 7 cases. In re Murray, 900 F.3d 53, 60 (2d Cir. 2018). "Even if a petition meets the statutory requirements of section 303, however, a bankruptcy court may dismiss it for cause under section 707(a) after notice and hearing." Id.

Section 707(a) does not define "cause", but gives three example grounds for dismissal that are "illustrative, not exclusive." In re Smith, 507 F.3d 64, 72 (2d Cir. 2007). Accordingly, the Bankruptcy Court "has discretion to determine what additional circumstances, not enumerated in the statute, may constitute cause." In re Newbury Operating LLC, No. 20-12976-JLG, 2021 WL 1157977, at *7 (Bankr. S.D.N.Y. Mar. 25, 2021) (quoting Clear Blue Water, LLC v. Oyster Bay Mgmt. Co., LLC, 476 B.R. 60, 67 (E.D.N.Y.2012) (section 1112(b) dismissal)). In resolving motions to dismiss under section 707(a), courts must "engage in case-by-case analysis in order to determine what constitutes 'cause' sufficient to warrant dismissal." In re Murray, 900 F.3d at 58, quoting In re Dinova, 212 B.R. 437, 442 (B.A.P. 2d Cir. 1997). In each case, courts in this Circuit "determine[ ] whether cause exists by looking at whether dismissal would be

in the best interest of all parties."  In re Murray, 900 F.3d at 58, quoting In re Smith, 507 F.3d at 72.

In its Ruling, the Bankruptcy Court found it had cause to dismiss for three reasons: Mr. Ross used the threat of the Involuntary Petition to intimidate Valuex Research, Mr. Ross filed the Involuntary Petition as a litigation tactic, and the petitioning creditors ignored adequate state court remedies.  Ruling at 15.  In their Appeal, the petitioning creditors argue that the Bankruptcy Court (1) denied them notice and a fair hearing under section 707(a), see Appellants' Br. at 19-22, 24-26; (2) that it abused its discretion by determining cause existed to dismiss, see Appellants' Br. at 22-24, 26-38; and (3) erred by retaining jurisdiction to award damages and attorneys' fees, see Appellants' Br. at 22-24, 26-38.  The court takes each of these arguments in turn.

A.    Notice and Hearing

Section 707(a) only permits a bankruptcy court to dismiss a Chapter 7 petition "after notice and a hearing . . . ."  11 U.S.C. § 707(a).  The petitioning creditors argue that they were not provided with notice of the grounds of dismissal, because the Bankruptcy court dismissed the Petition "for cause" pursuant to section 707(a), rather than under section 303.  Appellant's Br. at 19-22.  However, because the petitioning creditors had ample opportunity to oppose Valuex's Motion in briefing and at a lengthy hearing, the court is not persuaded.

The purpose of section 707(a)'s "notice and a hearing" requirement is "to enable parties to respond to the facts and law tendered in support of the motion [to dismiss]." In re Dinova, 212 B.R. 437, 444 (B.A.P. 2d Cir. 1997).  "Parties oppose a motion by refuting the movant's facts or bringing additional facts or law to the court's attention." Id.

In response to Valuex Research's Motion to Dismiss, the petitioning creditors filed two objections and were allowed to present evidence at a nearly five-hour evidentiary hearing. See Hearing Transcript. The defendants were on notice the Bankruptcy Court was considering dismissal and had every opportunity to bring "additional facts or law" to the Bankruptcy Court's attention that weighed against it. Further, the Second Circuit has upheld sua sponte decisions to dismiss under section 707(a), even when the parties' papers argue for dismissal on other grounds. See In re Murray, 900 F.3d 53, 57 (2d Cir. 2018). Accordingly, the court concludes the petitioning creditors were given sufficient notice.

The petitioning creditors also argue the Bankruptcy Court denied them a fair hearing because Mr. Ross was not afforded the extra latitude normally provided to pro se litigants. Apellant's Br. at 24-26. The petitioning creditors base this argument on a handful of exchanges during which the Bankruptcy Court objected to, or sustained Valuex's objections, to Mr. Ross's cross examination of Ms. Johansson. After reviewing the Hearing record on appeal, the court is unpersuaded.

"A trial court is allowed wide discretion in the management of the cross-examination of witnesses." United States v. Singh, 628 F.2d 758, 763 (2d Cir. 1980). Further, "while a pro se litigant should ordinarily be afforded a substantial degree of solicitude, the exact degree thereof will depend upon a variety of factors, including . . . the specific procedural context and relevant characteristics of the particular litigant." Tracy v. Freshwater, 623 F.3d 90, 102 (2d Cir. 2010).

Here, the petitioning creditors' refer to four instances where the Bankruptcy Court intervened to stop Mr. Ross from asking Ms. Johansson questions that the Attorney

13

D'Agostino has already asked her.  Appellants Br. at 12-14.  They refer to other examples where the Bankruptcy Court sustained objections by Valuex during Ross's cross examination.  Id. at 14.  Having reviewed each of these examples, none is sufficient to persuade this court that the Bankruptcy Court abused its discretion and denied petitioning creditors a fair trial.  That is especially true where, as here, the trial judge must oversee a pro se litigant's cross examination of a witness with whom he had an acrimonious relationship.

The court concludes that sufficient notice and a hearing were provided as required by law.

      B.    Dismissal for Cause

The petitioning creditors argue that none of the bases provided by the Bankruptcy Court provide "cause" to dismiss under section 707(a); thus, the Bankruptcy Court abused its discretion by dismissing the Petition.  Appellants' Br. at 22-24, 26-38. Valuex disagrees and argues that each of the three grounds provided by the Bankruptcy Court is sufficient for dismissal.  Appellee's Br. at 13-28.

In their Motion before the Bankruptcy Court, Valuex Research cited the Third Circuit's holding in In re Forever Green, 804 F.3d 328 (3d Cir. 2015), and argued that the Bankruptcy Court should dismiss the petition under section 303 because it was filed in bad faith.  See Mot. to Dismiss.  In Forever Green, the Third Circuit held that, due to the equitable nature of bankruptcy, an involuntary petition which otherwise meets the requirements of section 303 can be dismissed on the grounds that it was filed in bad faith.  Id. at 334-35.  In their counseled opposition before the Bankruptcy Court, the petitioning creditors did not argue that Forever Green should not control, but instead

14

disputed that the acts of the petitioning creditors here met the Third Circuit's standard for "bad faith."  <u>See</u> Memorandum in Support of Objection at 8-13 (B.C. Doc. No. 17).

As in the Third Circuit, courts in the Second Circuit have analyzed under section 303 whether involuntary petitions were filed in bad faith.  However, they have done so only in the context of whether to assess damages after dismissing the petition on other grounds.  <u>See</u>, <u>e.g.</u> <u>In re Anmuth Holdings LLC</u>, 600 B.R. 168 (Bankr. E.D.N.Y. 2019) (assessing damages for a deficient petition because petitioning creditors flied it in "bad faith").  Indeed, section 303's single reference to "bad faith" comes in its damages provision, section 303(i)(2), which allows damages, including punitive damages, "against any petitioner that filed the petition in bad faith".  11 U.S.C. § 303(i)(2).  In <u>Forever Green</u>, the Third Circuit reasoned that it was unreasonable to read the Bankruptcy Code to "permit the imposition of damages (including punitive damages) for bad-faith filings but not allow the same conduct . . . to provide a basis for dismissing the petition."  <u>Forever Green</u>, 804 F.3d at 334.  However, the Second Circuit has not held that "bad faith" alone is a basis for dismissal under Section 303 or 707(a), and explicitly declined to reach that issue in <u>Murray</u>.  <u>See</u> <u>Murray</u>, 900 F.3d at 60 ("We need not . . . classify misuse of the Bankruptcy Code as bad faith in order to accept it as cause to dismiss, particularly when, as here, misuse is one of a number of factors supporting cause to dismiss.")

In its Ruling, the Bankruptcy Court discussed, but did not apply, the Third Circuit's standard for "bad faith" dismissals under section 303.  Ruling at 11-14.  The Bankruptcy Court instead dismissed the petition under section 707(a), holding that

15

"cause" to dismiss exists because the petition is an "inappropriate use of the Bankruptcy Code."  See Murray, 900 F.3d at 60.

Because this court is bound by the law of the Second Circuit, it will proceed under the framework laid out in Murray. However, as discussed below, the court finds the Third Circuit's approach in Forever Green to be persuasive. In the court's view, the record on appeal supports a finding of bad faith on the part of the petitioning creditors which is sufficient to affirm dismissal under either section 707(a) or section 303.

In Murray, the Second Circuit held that it was an "[i]nappropriate use of the Bankruptcy Code" for the single creditor of a judgment debtor to use involuntary bankruptcy as a debt collection tool.  Id.  In Second Circuit affirmed the holding of the Bankruptcy Court, which found that nine factors supported dismissal for 'cause':

> "The bankruptcy court identified nine factors supporting its conclusion that the petition should be dismissed as an improper use of the bankruptcy system: (1) the bankruptcy court was the most recent battlefield in a long-running, two-party dispute; (2) [the creditor] brought the case solely to enforce a judgment; (3) there were no competing creditors; (4) there was no need for pari passu distribution; (5) assuming there were fraudulent transfers to be avoided, [the creditor] could do so in another forum; (6) [the creditor] had adequate remedies to enforce its judgment under non-bankruptcy law; (7) [the creditor] invoked the bankruptcy laws solely to secure a benefit—the ability to execute on both [the debtor] and his wife's interests in their apartment under 11 U.S.C. § 363(h)—that it does not have under non-bankruptcy law and without a creditor community to protect; (8) no assets would be lost or dissipated in the event that the bankruptcy case did not continue; and (9) [the debtor] did not want or need a bankruptcy discharge."

16

Murray, 900 F.3d at 57–58.[3]  In the present case, the court notes that several of these factors weigh against dismissal.  Most significantly, Valuex Research has 38 creditors, so there is a creditor community to protect as well as a legitimate interest in pari passu distribution.  See Introduction, 3 Bankruptcy Law Manual § 14:1 (5th ed.) (describing, among the purposes of involuntary bankruptcy, "provid[ing] equality of treatment among the creditors.").  As a result, this case presents a closer question for the court than the Second Circuit faced in Murray; namely, whether the acts of petitioning creditors, particularly Mr. Ross, can overcome the legitimate bankruptcy interests of serving the creditor community.  The analysis under section 707(a) requires the court "to balance the competing interests at stake in determining whether there is cause to dismiss." Murray, 900 F.3d at 57–58 .  In the court's view, however, two considerations still support dismissal.

First, 'cause' is a fact-specific inquiry in which courts may consider "the purpose for which the petition was filed".  Id. at 60.  In the court's view, this consideration strongly supports dismissal.  The Bankruptcy Court found that Mr. Ross's purpose in threatening to file the Involuntary Petition was to intimidate Valuex Research and to obtain credit terms more favorable to Mr. Ross and the other petitioning creditors. Ruling at 15-19.  This finding is sufficient to conclude that the Petition was filed for an improper purpose.  See In re Grossinger, 268 B.R. 386, 388 (Bankr. S.D.N.Y. 2001) ("To use an involuntary filing as a tactic to 'work it out' with one's alleged obligor is an

---

[3] Some courts have applied the so-called "Murray Factors" as a multi-factor test, see In re Newbury Operating LLC, No. 20-12976-JLG, 2021 WL 1157977, at *9 (Bankr. S.D.N.Y. Mar. 25, 2021). However, the Second Circuit said only that "we agree that the factors considered by the Bankruptcy Court favor dismissal"; it does not appear to this court that the Circuit intended them as a definitive list.

abuse of the bankruptcy process . . .".).  Contrary to what the petitioning creditors argue, this finding is strongly supported in the record.  By threatening to file the Involuntary Petition, Mr. Ross sought a higher rate of return for himself and the other petitioning creditors, as well as personal guarantees from the Johanssons.  Mr. Ross testified that had he obtained those credit terms, he would not have filed the involuntary petition. See Hearing Transcript at 93:3-8.  In the court's view, the Bankruptcy Court reasonably concluded that Mr. Ross's purpose in threatening involuntary bankruptcy was to obtain better terms for himself and the other petitioning creditors.

Nor did the Bankruptcy Court err in imputing Mr. Ross's motives and intent to the other petitioning creditors.  The record suggests that Mr. Ross was acting as a representative of the petitioning creditors, and that Ms. Johansson treated him as such. The court is especially justified in inferring that Mr. Ross's intentions represent the driving force behind the Petition when he was the only petitioning creditor who signed the Petition.  See In re Anmuth Holdings LLC, 600 B.R. 168, 195 (Bankr. E.D.N.Y. 2019) "In deciding whether a petition is motivated by ill will or malice, courts evaluate the actions of the petitioning creditor[s] before and after filing."  Therefore, the Bankruptcy Court's factual findings support the conclusion that the Petition was filed with an "improper purpose".  Murray, 900 F.3d at 60.

Second, this court must evaluate not just the interest of creditors, but also of the debtor and "of the bankruptcy system as a whole."  Murray, 900 F.3d at 62-63.  The interests of the debtor are obvious: Valuex Research vigorously opposed the involuntary petition and is not seeking a discharge.  Additionally, Ms. Johansson testified to the damage the Petition had done, not just to Valuex Research, but to its sister entities

whose operations and creditworthiness were damaged by their erroneous listing as aliases of Valuex Research.  Hearing Transcript at 110:5-22.

The court must also consider the public interest in "preventing parties from exploiting the bankruptcy system for non-bankruptcy-related reasons."  In re Murray, 900 F.3d at 63.  In this court's view, this is what Mr. Ross did by threatening to file the Petition to obtain more favorable CPN terms. See, supra, at 18.  If he had succeeded, it would have put him and the other petitioning creditors in a preferential position relative to Valuex Research's other creditors, something deeply at odds with the equitable purpose of bankruptcy.  See 1 Collier on Bankruptcy § 1.01 (16th 2024) (describing "the prime bankruptcy policy of equality of distribution among creditors of the debtor.") Because involuntary bankruptcy has such severe consequences for the alleged debtor, there is a strong public interest in preventing the threat of bankruptcy from being used as a tool of coercion.

Because the Petition was filed with an improper purpose, and the interests of the debtor and bankruptcy system as a whole weigh in favor of dismissal, the Bankruptcy Court did not abuse its discretion when it held that the Petition was an "inappropriate use of the Bankruptcy Code." See Murray, 900 F.3d at 60.  The Bankruptcy Court has broad discretion to "determine what additional circumstances, not enumerated in the statute, may constitute cause". See In re Newbury 2021 WL 1157977, at *7.  The purpose with which the petition was filed, as well as the interests of the debtor and bankruptcy system, place the Bankruptcy Court's decision "within the range of permissible decisions". See Murray, 900 F.3d at 59.  Accordingly, the Bankruptcy Court did not abuse its discretion when dismissing the Petition for cause under section 707(a).

In the alternative, this court finds that the record also supports a finding of "bad faith" on the part of petitioning creditors, for the same reasons underlying its conclusion that the Petition was filed with an "improper purpose". See, supra, at 17-18. This court is persuaded by the approach taken by the Third Circuit in Forever Green, and concludes that of bad faith on the part of petitioning creditors here also provides grounds for dismissal, either under section 707(a) or under section 303.  See In re Ocean Rig UDW Inc., 585 B.R. 31, 35 (S.D.N.Y. 2018), aff'd, 764 F. App'x 46 (2d Cir. 2019) ("The Court may affirm on any ground that finds support in the record and need not limit its review to the bases raised or relied upon in the decisions below.").

While the Second Circuit has not yet reached the issue of whether bad faith provides 'cause' for dismissal under Section 707(a), this court agrees with Forever Green's holding that, if "bad faith" can serve as the basis for punitive damages under section 303(i)(2), it can also serve as the basis of dismissal.

Because the Petition was an 'inappropriate use of the Bankruptcy Code," or, in the alternative, was filed in bad faith, the Bankruptcy Court did not abuse its discretion by dismissing it.

C.    Retaining Jurisdiction

Because the Bankruptcy Court dismissed the Petition under section 707(a), petitioning creditors argue that the Bankruptcy Court improperly retained its jurisdiction to consider any damages motion brought pursuant to section 303(i).  Appellants' Br. at 26-28.  Valuex Research argues the Bankruptcy Court may award damages under section 303(i) even if it dismissed a petition under different section.  Appellee's Br. at

30-32.  The Bankruptcy Court's Ruling does explain its basis for retaining jurisdiction under section 303(i).  <u>See</u> Ruling at 21.

Section 303(i) authorizes attorneys' fees and damages awards "if the court dismisses a petition under this section other than on consent of all petitioners and the debtor . . . ."  11 U.S.C. § 303(i).  Some courts interpret this provision to authorize damages only when a petition is dismissed under section 303.  <u>See</u> <u>e.g.</u>, <u>In re Newbury Operating LLC</u>, No. 20-12976-JLG, 2021 WL 1157977, at *13 (Bankr. S.D.N.Y. Mar. 25, 2021) ("costs and fees allowable under section 303(i) are not available in a case that is dismissed under a section other than section 303").

The Second Circuit has not yet clarified whether damages under 303(i) are available for petitions dismissed under other sections.  <u>See</u> <u>In re TPG Troy, LLC</u>, 793 F.3d 228, at f.n. 1 (2d Cir. 2015) (questioning whether 303(i) damages would be available in the event of section 305 abstention and calling it a question "for another day").  However, the Second Circuit has recognized that, "when an involuntary petition is dismissed, there is a presumption that costs and attorney's fees will be awarded to the alleged debtor (internal quotations omitted)." <u>Id.</u> at 235.  While <u>TPG Troy</u> was addressing a dismissal on grounds under section 303, this court sees no reason not to credit this presumption here.  Section 303(i) is meant to provide "protection for the debtor from frivolous or inappropriate involuntary filings".  <u>See</u> 2 Collier on Bankruptcy § 303.33 (16th 2024).  While the Bankruptcy Court dismissed the Petition under section 707(a) and not section 303, the Bankruptcy Court based its dismissal on the misconduct of petitioning creditors and inappropriate use of the Bankruptcy Code.  In the court's view, therefore, deciding damages under section 303(i) is appropriate.

Additionally, because this court finds the approach taken in <u>Forever Green</u> persuasive, this court holds alternatively that the Petition could have been dismissed under section 303 as a "bad faith" filing. Had the Bankruptcy Court done so, it would have mooted this question entirely.

Because there is a "presumption that costs and attorney's fees will be awarded to the alleged debtor" for dismissals based on creditor misconduct, <u>see TPG Troy,</u> 793 F.3d at 235, and alternatively because the Petition could have been dismissed under section 303, the Bankruptcy Court correctly retaining jurisdiction to decide damages under section 303(i).

## V.    CONCLUSION

The Bankruptcy Court concluded that the Involuntary Petition case should be dismissed as an inappropriate use of the Bankruptcy system.  This court **AFFIRMS** the Order of the Bankruptcy Court granting Valuex Research's Motion to Dismiss.


**SO ORDERED.**

Dated this 13th day of September at New Haven, Connecticut.



   <u>    /s/ Janet C. Hall          </u>
   Janet C. Hall
   United States District Judge

22